JUDGE KAPLAN

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X



JOY WARREN,

                           Plaintiff,

         v.

EMI GROUP LIMITED, d/b/a
EMI MUSIC PUBLISHING,
and LEO CORBETT, in his official and
individual capacities,

                       Defendants.

-----------------------------------------------------------------X

Civil Action No.:

Complaint

**Jury Trial Demanded**

## COMPLAINT AND DEMAND FOR JURY TRIAL

        Plaintiff Joy Warren ("Ms. Warren" or "Plaintiff"), by and through her undersigned counsel, Thompson Wigdor & Gilly LLP, as and for her Complaint in this action against Defendants EMI Group Limited, d/b/a EMI Music Publishing ("EMI" or the "Company"), and Leo Corbett ("Corbett") (together, "Defendants"), hereby alleges as follows:

### NATURE OF THE CLAIMS

        1.     This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices and retaliation committed against Ms. Warren, including Defendants' discriminatory treatment, sexual harassment and unlawful retaliation against Plaintiff, due to her gender and complaints of discrimination and sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 290 et seq. (the "NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. (the "NYCHRL").

2.      While employed at EMI, Ms. Warren was subjected to unlawful

discrimination and sexual harassment because of her gender, as well as to unlawful

retaliation. Specifically, Ms. Warren was degraded as a woman, subjected to vulgar acts

of sexual harassment and repeatedly sexually propositioned. After she repeatedly

complained about such unlawful conduct, the Company failed to take prompt remedial

action. To the contrary, Defendants embarked on a campaign of unlawful retaliation

against Ms. Warren because of her complaints, which culminated in the unlawful

termination of her employment.

3.      Defendants' conduct was knowing, malicious, willful and wanton and/or

showed a reckless disregard for Plaintiff, which has caused, and continues to cause,

Plaintiff to suffer substantial damages, permanent harm to her professional and personal

reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331

and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's

rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related

claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to this action, including the

unlawful employment practices alleged herein, occurred in this district.

## PARTIES

6.      Plaintiff Joy Warren is a resident of the Queens, New York. At all

relevant times, she met the definition of an "employee" under all applicable statutes.

2

7.     Defendant EMI is a music publisher with offices in various places throughout the world. At all relevant times, Defendant EMI has maintained principal places of business at 75 Ninth Avenue, New York, New York and 1290 Avenue of the Americas, New York, New York, and regularly transacts business in this district.

8.     At all relevant times, Defendant EMI has met the definition of an "employer" under all applicable statutes.

9.     Defendant Leo Corbett is the Chief Operating Officer ("COO") at EMI, works for Defendant EMI in New York, New York, and, upon information and belief, currently resides in Manhattan. At all relevant times, he has actively and directly participated in the discrimination and unlawful retaliation committed against Ms. Warren.

10.     At all relevant times, Defendant Corbett had authority to make personnel decisions concerning Plaintiff's continued employment, work schedule, assignments, salary and other employment benefits. At all relevant times, Defendant Corbett also had authority to discipline, including the right to terminate, Plaintiff and other EMI employees.

## PROCEDURAL REQUIREMENTS

11.     Plaintiff has complied with all statutory prerequisites to her Title VII claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 6, 2009, and having received notice of her right to sue from the EEOC, dated January 15, 2010. This action has been filed within 90 days of Plaintiff's receipt of the EEOC right to sue letter.

12.     Prior to the commencement of this action, a copy of this Complaint was served on both the New York City Commission on Human Rights and the Office of the

3

Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

13.    Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### EMI's Discriminatory Hiring and Promotional Practices

14.    Plaintiff Joy Warren, an African-American woman, was hired by Defendant EMI in or around December 2005 after a successful career as an entertainment attorney to fill the role of Director of Special Projects.

15.    However, Ms. Warren faced discriminatory conduct at EMI even before her employment commenced. By way of example only, and upon information and belief, Martin Bandier, a co-Chief Executive Officer of EMI in 2005, openly declared that he did not want to hire African-Americans for executive-level positions, even going so far as to say that he did not think EMI should "hire those people for those type of positions."

16.    Similarly, whereas white candidates for employment were only interviewed by two or three other employees prior to being hired, Ms. Warren was forced to interview with six different executives, some of whom were openly hostile to her, just to get the opportunity to work at the Company.

17.    After she was hired as Director of Special Projects, Defendants told her that they had put her in that position so that she could learn the Company's business model and prepare for advancement. Towards that end, Ms. Warren shadowed Defendant Corbett, the then Executive Vice President and Chief Financial Officer of EMI, and Roger Faxon, the President and COO at the time. She also prepared these high-level executives for meetings, drafted their agendas, and was responsible for keeping them abreast of developments in the Company.

4

18.    Throughout her tenure as Director of Special Projects, Ms. Warren received substantial praise from her supervisors, including Defendant Corbett, who told her that she was doing a "great job" and was adapting well to the Company.

19.    Despite her outstanding work, success and the praise of her supervisors, in late 2006, Defendant Corbett transferred Ms. Warren to a position in the Strategic Marketing Division, a department in the Company widely known to be failing. When Ms. Warren questioned why she was being transferred to a failing area of the Company with little growth potential so early in her employment at the Company, Defendant Corbett told her that it was the only position available for her. Nonetheless, Ms. Warren continued to perform outstanding work, and received further praise from her supervisors.

20.    Subsequently, in September 2007, Defendants transferred Ms. Warren, at her request, to a position with greater growth potential and management opportunities. The new position was that of Senior Director of Content Management, and Ms. Warren's responsibilities included developing and implementing a business plan for the CORE division of Defendant EMI, a newly formed division of the Company.

**Gender Discrimination and Sexual Harassment at EMI**

21.    During Ms. Warren's employment at Defendant EMI, the atmosphere at the Company was rampant with sexism. For example, male executives would frequently openly refer to women as "bitches," and during the first few months of Ms. Warren's employment, a majority of the high-ranking female executives were systematically terminated and replaced by white males.

22.    In 2007, Ms. Warren learned that Defendant EMI paid her substantially less than Hank Forsyth, a white male, for the same exact position. Ms. Warren

5

complained to Human Resources about the difference in pay and benefits between her and Forsyth, but rather than correcting the disparity, Defendant Corbett warned her that her complaints could "lead to trouble."

23. Ms. Warren was also sexually harassed by EMI executives at Company events and conferences. By way of example only, Ms. Warren attended the Company's conferences in New York and Miami each year. During Ms. Warren's first semiannual conference in Miami, in 2006, several international executives at the Company, including Manuel Tessloff, EMI's Executive Vice President for European Sales, and Arjen Witte, a Managing Director at EMI, made inappropriate comments about her body and leered at her, which Ms. Warren found offensive.

24. On numerous occasions, Tessloff also frequently told Ms. Warren that she was "so sexy," and on one occasion, when arranging for hotel rooms at a themed hotel for a Company conference, stated that he wanted to arrange for her to stay in the prison-themed suite so that he could lock her up. He also repeatedly said to Ms. Warren, "I wish I wasn't married" because he wanted to "run away" with her. Further, Tessloff called and emailed Ms. Warren to let her know when he was coming to New York and that he was looking forward to seeing her. Ms. Warren found Tessloff's statements and actions offensive and rejected his sexual advances.

25. Another example of sexual harassment committed against Ms. Warren occurred when she attended a work related conference in Berlin, Germany in October 2008. While in Berlin, Ms. Warren was repeatedly sexually harassed by high level EMI executives at a Company dinner. Specifically, then-Senior Vice President Oliver Schwenzer and then-Executive Vice President Andreas Kiel made lewd and inappropriate

6

comments about Ms. Warren's breasts and mouth and openly stared at her breasts and other body parts. At one point during the dinner, Schwenzer told her that he loved the way her mouth moved. Later, Schwenzer, while staring at Ms. Warren's breasts and making sucking noises, loudly pronounced that he wished he were an infant again. The harassing comments compelled Ms. Warren to leave the dinner to stop any further humiliation, but even as she prepared to leave, Schwenzer and another male colleague leered at her body and the other man said to Mr. Schwenzer in a very suggestive way, "She's exactly as you described her."

26.     Later that evening, Schwenzer and Kiel followed Ms. Warren to a bar where she was with other colleagues. Once there, they tried to convince her to drink more alcohol, sexually propositioned Ms. Warren and a friend and repeatedly asked them to go back to their hotel room. Ms. Warren was humiliated by their conduct and left the bar in tears. As she left, Schwenzer stated loudly to Kiel "How did we lose this one? I thought we had this one."

27.     The next day, Ms. Warren remained in her hotel room for most of the day, shaken and disturbed by the conduct of Schwenzer and Kiel from the previous night and fearful of facing them again. She also contacted Elicia Felix, a Human Resources generalist at the Company, about the events of the night before and asked for a meeting with the Director of Human Resources, Anne Roche.

28.     Shortly thereafter, Ms. Warren also sent an email to Defendant Corbett describing the conduct of Schwenzer and Kiel and the harm it caused her. Defendant Corbett responded that he would "need to deal with this."

29.     At a Company event held that same day and attended by Company
executives, Ms. Warren's colleagues were openly hostile and distant. By way of example
only, no one greeted her, whereas usually they would. Also during the event, Tessloff,
who had repeatedly sexually harassed Ms. Warren in the past, introduced Ms. Warren as
a "bitch" to another employee, and pointed to a statue of a nude male and asked Ms.
Warren if the genitals on the statue offended her. Tessloff's outrageous and deeply
offensive comments and disrespectful behavior were in retaliation for Ms. Warren's
complaints about the sexual harassment committed against her in Germany, which
Defendant Corbett had apparently conveyed to him, and because Ms. Warren had
repeatedly resisted Tessloff's own sexual advances towards her.

## Ms. Warren's Repeated Complaints and the Company's Failure to Act

30.     After Ms. Warren returned to the United States, she met with Anne Roche,
the Director of Human Resources, to discuss what had occurred in Berlin, but Roche was
completely disinterested in what Ms. Warren told her. Instead, she scoffed at Ms.
Warren, and made excuses for Ms. Warren's sexual harassers, incredibly, claiming that
they were just joking around and that Ms. Warren was too uptight about sexual
comments. Roche further told Ms. Warren that she would not be able to do her job if she
could not get along with Tessloff. Defendant EMI took no further steps to investigate
Ms. Warren's complaints.

31.     Despite his initial claim that he would "deal with" the sexual harassment
committed against Ms. Warren in Germany, Defendant Corbett failed to take any action
with respect to Ms. Warren's complaints about the degrading conduct to which she was
subjected. Instead, he dismissively told her to "stand on her own two feet" and to act like

8

an executive. Perhaps most troubling, rather than using his enormous power as COO at EMI to take prompt remedial action for what happened to Ms. Warren in Berlin, Defendant Corbett told Ms. Warren that she herself should seek apologies from her sexual harassers.

**Acts of Retaliation Against Ms. Warren**

32.     After Ms. Warren's complaints, Defendants subjected her to acts of unlawful retaliation.

33.     By way of example only, immediately after she complained to Defendant Corbett and Human Resources, Defendants began to strip her of her responsibilities. She had previously coordinated and run weekly management meetings, managed a staff of ten and closely interacted with Defendant Corbett, but now her position was suddenly marginalized. She was excluded from management meetings and learned only after the fact that they had occurred, which undermined her ability to do her work and her status among her colleagues. Additionally, Defendant Corbett became inaccessible and stopped speaking to her about material work-related matters, making it impossible for her to perform her duties.

34.     In or around January 2009, Defendant Corbett suddenly told Ms. Warren that she had completed her "assignment" with CORE, the new division in which she worked, and that the Company had decided to transfer her to a different position. Ms. Warren had never been told that her work at the CORE division was temporary. Defendant Corbett did not have a new position in mind for Ms. Warren, and merely asked her to prepare a proposal outlining what she would like to do at EMI.

9

35.     In or around February 2009, Ms. Warren presented Defendant Corbett with her proposal, but he rejected it and any possibility of Ms. Warren staying with the Company. He told her she was not suited for any position with the Company, that she would not be happy employed by the Company, and that she should meet with headhunters to "see what else was out there."

36.     For the next two months, Ms. Warren continued to go to work, but was stripped of all of responsibilities.

37.     In or around April 2009, Defendant Corbett unlawfully terminated Ms. Warren's employment by falsely claiming that she was not a good "fit" at EMI.

38.     Ms. Warren was terminated despite the fact that prior to her complaints of sexual harassment, Company executives identified her in writing as a high potential employee who possessed long term potential for promotion to a senior management position.

39.     Ms. Warren has been devastated by the unlawful actions taken against her, including her retaliatory termination. She has suffered, and continues to suffer, severe emotional distress as a result of the discrimination, hostile work environment unlawful retaliation and damage to her career.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Title VII)

40.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

41.     Defendant EMI has discriminated against Plaintiff on the basis of her sex, in violation of Title VII by denying to her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in an employment

10

setting free of unlawful harassment, stripping her of her job responsibilities and terminating her employment.

42.     Defendant EMI has discriminated against Plaintiff on the basis of her sex, in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive sexual harassment of Plaintiff.

43.     As a direct and proximate result of Defendant EMI's unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

44.     As a direct and proximate result of Defendant EMI's unlawful discriminatory conduct and harassment in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

45.     Defendant EMI's unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

46.      Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

47.      Defendant EMI retaliated against Plaintiff in violation of Title VII for her opposition to Defendants' discriminatory practices toward her and/or her complaints about Defendants' discriminatory practices toward her.

48.      As a direct and proximate result of Defendant EMI's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

49.      As a direct and proximate result of Defendant EMI's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

50.      Defendant EMI's unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of
### New York State Human Rights Law)

51.     Plaintiff realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if set forth fully herein.

52.     Defendants have discriminated against Plaintiff on the basis of her sex, in

violation of the New York State Human Rights Law by denying her equal terms and

conditions of employment, including but not limited to, denying her the opportunity to

work in an employment setting free of unlawful harassment, stripping her of her job

responsibilities and terminating her employment.

53.     Defendants have discriminated against Plaintiff on the basis of her sex, in

violation of the New York State Human Rights Law by creating, fostering, condoning,

accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work

environment that included, among other things, severe and pervasive harassment of

Plaintiff.

54.     As a direct and proximate result of Defendants' unlawful discriminatory

conduct and harassment in violation of the New York State Human Rights Law, Plaintiff

has suffered and continues to suffer monetary and/or economic harm, including but not

limited to, loss of past and future income, compensation, and benefits for which she is

entitled to an award of damages.

55.     As a direct and proximate result of Defendants' unlawful discriminatory

conduct and harassment in violation of the New York State Human Rights Law, Plaintiff

has suffered, and continues to suffer, severe mental anguish and emotional distress,

including but not limited to depression, humiliation, embarrassment, stress and anxiety,

13

loss of self-esteem and self-confidence, and emotional pain and suffering for which she is
entitled to an award of damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of New York State Human Rights Law)

56.    Plaintiff realleges and incorporates by reference each and every allegation
contained in the preceding paragraphs as if set forth fully herein.

57.    Defendants retaliated against Plaintiff in violation of the New York State
Human Rights Law for her opposition to Defendants' discriminatory practices towards
her and/or her complaints about Defendants' discriminatory practices towards her and
other female employees.

58.    As a direct and proximate result of Defendants' unlawful retaliatory
conduct in violation of the New York State Human Rights Law, Plaintiff has suffered,
and continues to suffer, monetary and/or economic harm, including but not limited to loss
of past and future income, compensation, and benefits for which she is entitled to an
award of damages.

59.    As a direct and proximate result of Defendants' unlawful retaliatory
conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and
continues to suffer severe mental anguish and emotional distress, including but not
limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem
and self-confidence, and emotional pain and suffering for which she is entitled to an
award of damages.

14

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Aiding and Abetting Violations of New York State Human Rights Law)

60.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

61.     Defendant Corbett knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York State Human Rights Law.

62.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

63.     As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Discrimination and Harassment in Violation of
### New York City Human Rights Law)

64.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

65.     Defendants have discriminated against Plaintiff on the basis of her sex, in violation of the New York City Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to

15

work in an employment setting free of unlawful harassment, stripping her of her job responsibilities, and terminating her employment.

66.    Defendants have discriminated against Plaintiff on the basis of her sex, in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff.

67.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

68.    As a direct and proximate result of Defendants' unlawful discriminatory conduct and harassment in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

69.    Defendants' unlawful discriminatory actions and harassment constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of New York City Human Rights Law)

70.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

71.     Defendants retaliated against Plaintiff in violation of the New York City Human Rights Law for her opposition to Defendants' discriminatory practices towards her and/or her complaints about Defendants' discriminatory practices towards her.

72.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

73.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

74.     Defendants' unlawful retaliatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

17

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Aiding and Abetting Violations of New York City Human Rights Law)

75.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76.     Defendant Corbett knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York City Human Rights Law.

77.     As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of damages.

78.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

79.     Defendant Corbett's unlawful actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.   An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.   An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

D.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

19

F.      An award of damages in an amount to be determined at trial, plus

prejudgment interest, to compensate Plaintiff for harm to her professional

and personal reputation and loss of career fulfillment;

G.      An award of damages for any and all other monetary and/or non-monetary

losses suffered by Plaintiff in an amount to be determined at trial, plus

prejudgment interest;

H.      An award of punitive damages;

I.      An award of costs that Plaintiff has incurred in this action, as well as

Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law;

and

J.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated

herein

Dated: New York, New York
       February 4, 2010                    Respectfully submitted,

                                  THOMPSON WIGDOR & GILLY LLP

                           By: _____
                                  Kenneth P. Thompson (KT-6026)

                                  85 Fifth Avenue, Fifth Floor
                                  New York, NY  10003
                                  Telephone:  (212) 257-6800
                                  Facsimile:  (212) 257-6845


                                  COUNSEL FOR PLAINTIFF